IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-460-FL

| | |
|---|---|
| MICHAEL EAGLIN,[1]<br><br>Plaintiff/Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-11, -13]. Claimant Michael Eaglin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 23, 2022, alleging disability beginning March 15, 2020. (R. 14, 540–46). The claim was denied initially and upon reconsideration. (R. 14, 126–38). A hearing before an Administrative Law Judge ("ALJ") was held on July 24, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 82–116). On August 15, 2024, the ALJ issued

[1] The complaint names Michael Eaglin as the plaintiff, [DE-1], but the plaintiff's brief, [DE-11], and the ALJ's decision, (R. 14), indicate the plaintiff's name is Michael Eaglin, Jr.

a decision denying Claimant's request for benefits, (R. 139–56), but the Appeals Council granted review and remanded the claim to the ALJ for further proceedings, because relevant evidence received by the Agency was omitted from the record. (R. 157–62). A different ALJ held a hearing on February 27, 2025, and received testimony from Claimant and a VE. (R. 38–81). On March 24, 2025, the ALJ denied Claimant's request for benefits, (R. 11–37), and the Appeals Council subsequently denied review, (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is

limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

disabled" as defined in the Act. At step one, the ALJ found that although Claimant had engaged in substantial gainful activity during the period from his alleged onset date of March 15, 2020, through the date last insured of December 31, 2026, it was an "unsuccessful work attempt," and so the ALJ proceeded to step 2. (R. 16–17). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, arthritis/degenerative joint disease, post-traumatic stress disorder, major depressive disorder, adjustment disorder, and hypertension, and the non-severe impairments of benign prostate hyperplasia, history of Covid, hemorrhoids, vitamin D deficiency, hyperlipidemia, migraines, and tinnitus/hearing loss.[2] (R. 17). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–20). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in understanding, remembering, or applying information; and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[3] with the following limitations:

> he is limited to frequent pushing, pulling, operating hand controls, handling, fingering, feeling, and reaching in all directions with the upper extremities;

---

[2] The ALJ also stated at step 2 that "[t]he claimant said he has Alzheimer's disease; however, there is no evidence showing Alzheimer's is a medically determinable impairment." (R. 17). Claimant testified at the first administrative hearing, when discussing difficulties with memory, that he could not remember "dates and stuff, but it's just like I have Alzheimer's disease at 50 years old, and I really have to concentrate to remember stuff." (R. 102). This appears to be a figure of speech rather than him claiming to actually have Alzheimer's disease.

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

> frequent pushing, pulling, operating foot controls with the lower extremities; frequently climbing ramps and stairs, but occasional climbing ladders, ropes, or scaffolds; balancing is frequent, but stooping is occasional; kneeling and crouching would be frequent; crawling is occasional; avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. The claimant is able to understand simple instructions and perform simple tasks; he can maintain concentration, persistence, and pace to stay on task for periods of 2 hours over course of a typical 8-hour workday with normal breaks in order to perform such tasks, in a work setting that is low stress setting, which is further defined by the work setting not being production-pace or quota-based. Rather, he requires a goal-oriented job that primarily deals with things instead of people, with no more than occasional social interaction as part of the job with supervisors and co-workers, but no work with the public as part of the job, such as sales or negotiation. This does not preclude incidental or casual contact as it might arise, but the job itself would not require the claimant to work directly with the public to any extent. He requires the flexibility of a sit/stand option allowing for position changes at 30-minute intervals.

(R. 20–28). In making this assessment, the ALJ found Claimant's statements about his limitations were not persuasive of disability based on the medical and other evidence in the record. (R. 23). At step four, the ALJ concluded Claimant was unable to perform his past relevant work as a safety manager; nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 28–30).

## V. DISCUSSION

Claimant contends the ALJ erred in determining his RFC in three ways: first, by failing to account for his moderate limitation in concentration, persistence, or maintaining pace; second, by failing to account for his need to use a cane and improperly including a sit/stand option not sufficiently posed to the VE; and third, by improperly rejecting the opinion of Sybil Curry, Ph.D., a licensed social worker. Pl.'s Br. [DE-11] at 9–17. The Commissioner counters that the ALJ sufficiently explained the RFC regarding Claimant's mental impairments, adequately addressed the alleged need for a cane, properly relied on the VE's testimony regarding a sit/stand option, and

properly evaluated Dr. Curry's opinion. Def.'s Br. [DE-13] at 9–29.

### A. Moderate Limitation in Concentration, Persistence, or Pace

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

The Fourth Circuit held in *Mascio* that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (*quoting Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."

*Id.* The court acknowledged there could be instances where a moderate limitation in concentration, persistence, or pace at step three does not require a limitation in the RFC; however, the failure to explain such a result is error requiring remand. *Id.* ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. . . . But because the ALJ here gave no explanation, a remand is in order."); *see also Shinaberry v. Saul*, 952 F.3d 113, 122 (4th Cir. 2020) (holding that ALJ's decision comported with *Mascio* where the ALJ explained why evidence supported mental limitation to simple, routine, repetitive tasks and included limitations in the hypothetical to the VE); *Iva K. v. Soc. Sec. Admin.*, No. 1:19-CV-02954-JMC, 2020 WL 3060752, at *4 (D. Md. June 9, 2020) ("[P]ursuant to *Mascio*, once the ALJ made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment, or explain why no such limitation is necessary.").

In this case, the ALJ imposed limitations to address Claimant's moderate limitation in concentration, persistence, or pace, including limitations aimed at both task complexity and the ability to stay on task. The ALJ found that Claimant is able to understand simple instructions and perform simple tasks and to maintain concentration, persistence, or pace to stay on task for periods of two hours over the course of a typical 8-hour workday with normal breaks in order to perform such tasks, in a work setting that is low stress, which is further defined by the work setting not being production-pace or quota-based. (R. 20). The ALJ further explained that Claimant requires a goal-oriented job primarily dealing with things instead of people, with no more than occasional social interaction with supervisors and co-workers, but no work with the public, such as sales or negotiation, which would not preclude incidental or casual contact as it might arise, but the job

itself would not require the claimant to work directly with the public to any extent. (R. 20–21).

First, Claimant argues that the ALJ's finding of moderate limitation in concentration, persistence, or pace is in conflict with the RFC limitation that Claimant can maintain concentration for two-hour periods of time, which he argues is, in fact, no restriction as to concentration. Pl.'s Br. [DE-11] at 10. This court has found that the inclusion of a limitation to simple, routine tasks, or unskilled work, coupled with a finding that a claimant could stay on task for two hours, which equates to "normal breaks," when performing unskilled work, sufficiently accounts for a moderate limitation in concentration, persistence, or pace. *See Moore v. Bisignano*, No. 4:24-CV-76-M-RN, 2025 WL 1905344, at *2 (E.D.N.C. July 10, 2025). In so concluding, the court rejected the argument Claimant makes here that a limitation that accommodates off task time with normal breaks is no limitation at all, and explained that courts within the Fourth Circuit routinely find that where "the ALJ opted to limit Plaintiff to both simple instructions and two-hour work intervals over the course of an eight-hour workday," it is sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace. *See id.*, 2025 WL 1905344, at *2 (collecting cases); *see also Thomas W. v. Bisignano*, No. 1:24CV980, 2026 WL 734991, at *11 (M.D.N.C. Mar. 16, 2026).

Next, Claimant argues that the ALJ's inclusion of the limitation to simple, routine or unskilled work or the prohibition against Claimant performing work that involves production rate pace or quotas, without reasonable explanation, are insufficient and would necessitate remand under *Mascio*. Pl.'s Br. [DE-11] at 10. This is not a case like *Mascio* where the ALJ ignored without explanation the Claimant's moderate limitations in concentration, persistence, or pace. In *Mascio*, the ALJ's hypothetical to the VE "said nothing about Mascio's mental limitations," and the VE included an "unsolicited addition of 'unskilled work'" in the hypothetical, which the ALJ

adopted in the RFC. 780 F.3d at 637–38. Here, the ALJ not only limited Claimant to simple instructions and tasks, but he limited Claimant to work in a low stress setting with limited social interactions; importantly, he also explained that low stress meant not being production-pace or quota-based but, rather, being a goal-oriented job that primarily deals with things instead of people, (R. 20), which distinguishes this case from *Thomas v. Berryhill*, 916 F.3d 307 (4th. Cir. 2019).

This case is more akin to *Sizemore v. Berryhill*, in which the Fourth Circuit affirmed an ALJ's decision where the RFC included a limitation to "work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] no public contact." 878 F.3d 72, 79 (4th Cir. 2017). There, the court found the additional descriptors explained the restriction intended by the ALJ, and the court was able to evaluate whether the limitation to non-production jobs adequately accounted for the claimant's limitations. *Id.* at 81; *McNeill v. O'Malley*, No. 5:23-CV-346-M-BM, 2024 WL 4500708, at *10 (E.D.N.C. Aug. 19, 2024) ("A court in this circuit has noted that '[n]umerous courts . . . have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.'" (citing *Andrew E. v. Kijakazi*, No. CV 22-1348-BAH, 2023 WL 144763, at *4 (D. Md. Jan. 10, 2023) (collecting cases))), *report and recommendation adopted*, 2024 WL 4326814 (E.D.N.C. Sept. 27, 2024); *Williams v. O'Malley*, No. 5:23-CV-407-D, 2024 WL 3765760, at *8–9 (E.D.N.C. July 23, 2024) (finding substantially similar RFC limitation to a low stress work setting with "no production-pace or quota-based work" and social interaction limitations was "sufficient for the court to meaningfully review the RFC . . . ."), *report and recommendation adopted*, 2024 WL 3763749 (E.D.N.C. Aug. 9, 2024). Here, the additional descriptors of a non-quota-based, goal-oriented job that primarily deals with things instead of people, along with the limitation on social interactions, add context not included in *Thomas* that sufficiently clarifies what the ALJ intended. The ALJ

imposed limitations that account for both task complexity and the ability to stay on task and sufficiently explained those limitations to allow for meaningful review.

Finally, Claimant questions the ALJ's failure to impose greater restrictions related to his mental impairments, Pl.'s Br. [DE-11] at 11–13, but the RFC is supported by substantial evidence. At step 2, the ALJ acknowledged Claimant's PTSD diagnosis, testimony regarding difficulty at times getting along with others (supervisors in particular), and testimony that he has difficulty focusing, but also considered Claimant's lack of mental health treatment other that a few appointments in June 2024 and early 2025, that during the relevant period he was able to supervise workers at a golf course, that he testified he stopped working due to physical impairments, and that the VA records suggest he can manage his own benefits and the VA denied caregiver assistance. (R. 19). In the RFC analysis, the ALJ discussed Claimant's testimony from the administrative hearing regarding his anxiety, depression, and PTSD, but found it did not support further limitations beyond those imposed in the RFC. (R. 22–24). The ALJ explained that although Claimant stated in his adult function report that he was only able to pay attention for 30 seconds, (R. 644), he was able to focus, concentrate, and provide testimony at the two administrative hearings; his statement that he could not handle his own finances because he cannot focus, (R. 642), was contradicted by the fact that he was not appointed a fiduciary to manage his VA benefits; and his hearing testimony regarding difficulty concentrating due to anxiety was undercut by the fact that he has received very little medical treatment and had not sought inpatient or emergency care despite the extreme symptoms to which he testified, (R. 24). The ALJ went on to discuss in detail Claimant's medical records, which reflected that despite his reports of PTSD symptoms and complaints of anxiety, Claimant failed to attend appointments and declined further treatment options until he requested a mental health consult for his social security claim. (R. 24–

26, 850–70, 1080–82, 1160). Claimant has pointed to no evidence in the record that his failure to seek treatment was due to a lack of access, affordability, or a symptom of his mental health issues. *See Michael J. N v. Bisignano*, No. 1:25CV455, 2026 WL 1245407, at *14 (M.D.N.C. May 6, 2026) (finding the ALJ was permitted to conclude that the claimant's symptoms were not as severe as alleged based on limited mental health treatment where the record failed to demonstrate the failure was due to financial hardship or his mental illness); *Rorrer v. Kijakazi*, No. 2:21-CV-15-D, 2022 WL 3500424, at *5 (E.D.N.C. Aug. 2, 2022) (finding the failure to seek treatment is a proper consideration in assessing a claimant's subjective complaints) (citing 20 C.F.R. § 416.929(c)(3)(v); *Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. June 1, 2015)), *report and recommendation adopted*, 2022 WL 3499959 (E.D.N.C. Aug. 17, 2022). When Claimant did receive treatment for his mental health impairments in early 2025, his mental status examinations were normal. (R. 26–27, 1130–35).

The ALJ also discussed the VA's March 2020 denial of Claimant's request for caregiver services from his brother, which found that although Claimant reported the need for assistance in almost all activities of daily living, there was no evidence in the medical records to support his asserted level of need. (R. 24, 948–54). Of particular relevance here, it was noted that Claimant previously denied having cognitive symptoms, including forgetfulness, losing track of time, getting lost, and difficulty with managing money; when offered therapy and medication for PTSD symptoms he declined; it is likely that his symptoms "may decrease or become more manageable with treatment"; and that although he continued to experience PTSD symptoms, he is stable overall. (R. 24, 953). Claimant accuses the ALJ of cherry-picking evidence by focusing on one VA record while declining to discuss his 100% VA disability rating. Pl.'s Br. [DE-11] at 11–12. The court finds no inconsistency in the ALJ's treatment of the VA evidence where the ALJ

considered the underlying VA records, which are distinct from the VA disability rating. *See* 20 C.F.R. § 404.1504 (providing that analysis about another agency's decision is not required but supporting evidence underlying the decision will be considered); *Rogers v. Kijakazi*, 62 F.4th 872, 879–80 (4th Cir. 2023).

The ALJ fully discussed Claimant's testimony and the medical record evidence, Claimant points to no material evidence the ALJ failed to consider, and it is not the court's role to re-weigh evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) (" [I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." ). The ALJ's decision sufficiently explained why he did not impose greater limitations in the mental RFC and how he accounted for Claimant's moderate limitation in concentration, persistence, or pace, allowing for meaningful review. Accordingly, because the ALJ correctly applied the law, explained his reasoning, and the decision is supported by substantial evidence, there is no error.

**B. Dr. Curry's Opinion**

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the

record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* § 404.1520c(a) & (b)(2). Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

Dr. Curry completed a check-the-box Mental Residual Functional Capacity and Medical Source Statement form on July 2, 2024. (R. 1111–14). Dr. Curry noted diagnoses of Post-traumatic stress disorder (F43.1); Major Depressive Disorder, Recurrent Without Psychotic Features (F33.2); and Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.23), that she planned to see Claimant for treatment once a week for 60 minutes, and that his prognosis was good to fair depending on participation and follow-up with treatment goals. (R. 1111). Dr.

Curry identified Claimant's "signs and symptoms" as depressed mood, sleep disturbance, decreased energy, difficulty concentrating or thinking, distractibility, and increase in goal-directed activity or psychomotor agitation. *Id.* In rating Claimant's mental abilities as needed to do unskilled work, Dr. Curry indicated that Claimant was "Seriously limited, but not precluded" in the areas of remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, making simple work-related decisions, asking simple questions or requesting assistance, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (R. 1112). In the remaining areas—maintaining attention for two-hour segment, maintaining regular attendance and being punctual within customary usually strict tolerances, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in routine work setting, dealing with normal work stress, and being aware of normal hazards and taking appropriate precautions—Dr. Curry found Claimant was "Unable to meet competitive standards." *Id.* Dr. Curry also found that Claimant was markedly limited in the ability to understand, remember, or apply information; to interact with others; and to concentrate, persist, or maintain pace; and was extremely limited in the ability to adapt or manage oneself. (R. 1113). Dr. Curry checked boxes indicating that Claimant had, a "[m]edically documented history of the existence of the disorder over a period of at least 2 years and there is evidence of both of the following: Medical treatment, mental health therapy, psychosocial support(s), or a highly-structured setting(s) that is ongoing and that diminishes the

symptoms and signs of your mental disorder and Marginal adjustment, that is, the patient has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life." *Id.* Finally, Dr. Curry checked the box indicating Claimant would be absent from work more than four days per month and answered affirmatively that the patient's noted symptoms and limitations had applied since March 14, 2020. (R. 1114).

The ALJ evaluated Dr. Curry's opinion as follows:

> As for the consistency and supportability factors, the opinion is not supported by Dr. Curry's limited treatment records, as she provided no objective MSE findings. The limited treatment records show the claimant's reported symptoms, and they had discussions, but again, there were no objective medical findings to support the marked limitations and resulting limitations including absenteeism. Further, the opinion is inconsistent with the VA treatment records, which routinely show the claimant with a normal mood and affect (Ex. B2F/8, 31, 59, 70). More recent MSEs by VA providers show the claimant was alert and oriented to person, place, and time with a euthymic mood, normal speech, coherent thought processes, goal directed thoughts, and no delusions or internal stimuli (Ex. B8F/18, 28, and 53); the claimant had normal speech, appropriate eye contact, calm and cooperative behavior, no signs of agitation or distress, well-groomed and appropriate dressed, normal psychomotor activity, ok mood, congruent affect, normal thought content and processes, intact insight and judgement, and intact memory and attention (Ex. B8F/6-9 and 53). For these reasons, I find this opinion unpersuasive in determining a mental residual functional capacity for the claimant.

(R. 27). Claimant contends that the ALJ's consistency and supportability analysis places too much emphasis on a lack of objective evidence in violation of the Fourth Circuit's holding in *Shelley C. v. Comm'r of Soc. Sec. Admin.*, that "symptoms of MDD [major depressive disorder], like those of fibromyalgia, are 'entirely subjective'" and "because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence substantiating the claimant's impairment.'" 61 F.4th 341, 361–62 (4th Cir. 2023) (quoting *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 97–98 (4th Cir. 2020)). More specifically, Claimant asserts that the ALJ failed to address descriptions of Claimant's PTSD and depression symptoms, his combat-mode episodes, or Dr.

Curry's opinions on absenteeism; failed to engage Dr. Curry's clinical findings and longitudinal treatment evidence; and focused only on treatment visits where mental status examinations were normal. Pl.'s Br. [DE-11] at 15–17.

The ALJ considered the consistency and supportability factors as required by the regulations. First, the ALJ addressed supportability, finding that Dr. Curry's limited treatment records included no mental status examination findings that would support her marked limitation and absenteeism opinions. (R. 27). Dr. Curry met Claimant for his first appointment on June 17, 2024, just 15 days before she provided her opinion, for a psychological assessment. (R. 1115). In the RFC analysis, the ALJ summarized the one-page progress note, which stated that Claimant "discussed the circumstances of his psychological injuries during his military service"; "talked about the impact of these psychological injuries on his daily life and relationships"; and Dr. Curry and Claimant "discussed the treatment process and plan," which was for Claimant to meet once a week to address his PTSD, depression, and anxiety. (R. 26, 1115). Claimant did not see Dr. Curry again until July 22, 2024, after she provided her opinion, and the ALJ also considered that progress note, which included Claimant's report that he "continued to go into 'combat mode' when under psychological, emotional, and physiological stress," resulting in "blackout situations." (R. 26, 1116). Claimant did not return to Dr. Curry for further mental health treatment.

This case is not like *Shelley C.*, where the doctor providing the opinion had treated the claimant for two decades, and there was a pattern of responsiveness to medication adjustments followed by documented symptoms, such as low mood, tearful affect, and reported crying spells, that supported the doctor's opinion regarding the claimant's limitations. 61 F.4th at 357. Here, there was no objective medical evidence, such as observations of mood and affect, or explanation supporting Dr. Curry's conclusions, and Claimant failed to engage in even the conservative

treatment plan of weekly therapy visits. This case is more like *Drumgold*, where the Fourth Circuit found no error in the ALJ's supportability analysis because the provider's opinion was not supported by objective medical evidence or an explanation of how it arrived at the conclusions. *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 606–07 (4th Cir. 2025) (finding "[s]ubstantial evidence supports the ALJ's conclusion that Sarmadi's opinion is unpersuasive because she didn't support her opinion with 'relevant, objective medical evidence and explanation.'") (first quoting *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023), then citing 20 C.F.R. § 404.1520c(c)(1)). The ALJ, likewise, sufficiently considered the consistency factor by discussing the limited VA mental health treatment notes, which also lacked support for the marked limitations found by Dr. Curry. (R. 27, 850–70, 1080–82, 1130–35, 1160). The fact that Claimant can "point to other evidence that supports h[is] position does not render the ALJ's decision unsupported," where the ALJ fully considered and weighed that evidence. (R. 23–27); *see Allen v. Kijakazi*, No. 2:20-CV-89-M, 2022 WL 3655488, at *9 (E.D.N.C. Aug. 4, 2022) (quoting *Lilley v. Saul*, No. 4:19-CV-93-RJ, 2020 WL 3884429, at *11 (E.D.N.C. July 9, 2020), *report and recommendation adopted*, 2022 WL 3655217 (E.D.N.C. Aug. 24, 2022). Accordingly, the ALJ did not err in evaluating Dr. Curry's opinion.

**C. Cane and Sit/Stand Option**

"The requirement to use a hand-held assistive device may . . . impact . . . [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." *Daniel v. Berryhill*, No. 5:17-cv-338, 2018 WL 4134844, at *5 (E.D.N.C. July 13, 2018), *adopted by*, 2018 WL 4113340 (E.D.N.C. Aug. 29, 2018). Although Social Security Ruling ("SSR") 96-9p addresses the use of a handheld assistive device by individuals capable of less than a full range of sedentary work, "district courts

within the Fourth Circuit have consistently referred to [SSR 96-9p] for direction when a claimant alleges that the ALJ failed to properly consider the claimant's use of a hand-held assistive device in the RFC analysis." *Id.* (citing *Lovejoy v. Berryhill*, No. 2:17-cv-02921, 2018 WL 2729240, *14 (S.D.W. Va. 2 May 2018), *adopted by*, 2018 WL 2728032 (S.D.W. Va. June 5, 2018)). SSR 96-9p provides that an "RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." SSR 96-9p, 1996 WL 374185, *5 (July 2, 1996). An ALJ must consider the impact of a "medically required hand-held assistive device." *Id.* at *7. For an ALJ to find that a handheld assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*

At step three, the ALJ acknowledged Claimant's allegations that he could walk only 30 feet and then must rest about an hour, that he can stand and walk for no more than 20 minutes, and that he uses a cane all the time, but found those statements unsupported by evidence that examinations routinely show claimant to have a normal gait with no assistance, and treatment records show the claimant reported exercising more and walking on trails. (R. 18, 853, 898, 904, 917, 951, 975). The ALJ also discussed Claimant's need for a cane in the RFC analysis, again, recounting Claimant's testimony that he uses a cane everywhere he goes and noting that the cane was prescribed. (R. 22–24). The ALJ then explained that Claimant had no updated prescription in the last four years, and the records reflect a 2-year gap in the complaint of any back pain until March of 2022, but that August 2022 ER visit findings included normal range of motion throughout the musculoskeletal system with no indications of a cane or other ambulatory assistive device. (R.

24–25, 876).

Claimant contends that the ALJ failed to sufficiently explain why the need for a cane was omitted from the RFC despite the record demonstrating he was prescribed a cane between 2014 and 2015; there were multiple examples of gait issues; he had the ability to perform very limited walking, numbness and weakness of the lower extremities, and diagnoses of lumbar degenerative disc disease with radiculopathy; and he testified that he utilizes his cane everywhere he goes and that it prevents him from falling when his legs "give out." Pl.'s Br. [DE-11] at 13–14. The court can trace the ALJ's reasoning in finding that Claimant's need for a cane is not supported by the record. For example, Claimant cited a March 9, 2023 treatment where he reported low back pain with intermittent numbness to both lower extremities, but the same treatment note documents normal gait and station on examination and mentions no use of a cane or need for ambulatory assistance. (R. 853). Claimant also cites imaging from 2019 and March 2023, finding mild to moderate multilevel degenerative disc disease and mild facet arthropathy, (R. 1012, 1014), and an April 2024 chiropractic visit for back pain, but neither suggests Claimant used a cane or required assistance to ambulate, and although Claimant reported severe constant pain with limited range of motion, he failed to return for his next three appointments and his remaining appointments were cancelled, (R. 1042–43). A January 2025 treatment note states that Claimant reported playing golf in his free time. (R. 1136). Claimant has pointed to no medical records during the relevant period that indicate he utilized a cane or required assistance to ambulate, and the fact that Claimant was at one time prescribed a cane is not dispositive. *See Clayton v. Bisignano*, No. 5:24-CV-511-FL, 2025 WL 2650419, at *5 (E.D.N.C. Aug. 26, 2025) ("[A] prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity.") (citations omitted), *report and recommendation adopted*, 2025 WL 2648230 (E.D.N.C. Sept. 15, 2025).

Accordingly, substantial evidence supports the ALJ's omission of the need to use a cane from the RFC. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) ("Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings.") (internal quotation marks and citations omitted).

Finally, Claimant contends the ALJ's RFC included a sit/stand option that was not presented in the hypothetical to the VE. Pl.'s Br. [DE-11] at 14–15. To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

The ALJ's RFC provided for "the flexibility of a sit/stand option allowing for position changes at 30-minute intervals," along with the following footnote specifically addressing the issue raised by Claimant:

> The undersigned did not present the vocational expert with a specific frequency for the sit-stand option in the hypotheticals. However, upon questioning, the VE explained a competitive sit/stand option is one that allows no more than 2 position changes per hour. After consideration of the entire record, the undersigned has determined this frequency satisfies the claimant's need for a sit/stand option. Thus, the specific frequency provided by the VE has been added to the RFC finding in order to better define the sit/stand option. In so doing, the undersigned has not relied upon the VE to provide an opinion concerning the claimant's RFC. Rather, the VE was merely asked to provide his/her opinion with respect to a competitive sit/stand option, especially since the undersigned inquired as to the general availability of a sit/stand option in the hypothetical(s).

(R. 21 n.1). The administrative hearing transcript reflects that after the ALJ posed the first hypothetical, he asked the VE, "And if the individual I described for you in the first hypothetical needed the flexibility of a sit/stand option, would any of those jobs allow for that, and then if so,

what frequency?" (R. 70). The VE responded that

> if that readjustment was at least 30 minutes to hold each position, I do believe it would be allowed. I would reduce the availability of each job by half to allow for that. That would reduce the router to approximately 26,500 positions in the national economy. The marker position, I would reduce that number by approximately -- to approximately 150,000 positions in the national economy. And then for the photocopy machine operator, that would reduce the availability to approximately 8,250 positions in the national economy. And if they were readjusting more frequent than that 30-minute mark, I do believe that that would he preclusive to employment as it would be distracting to coworkers and difficult to carry tasks to completion.

*Id.*

To the extent Claimant is arguing it was error for the ALJ to ask what frequency of sit/stand option would eliminate the previously identified jobs, rather than to specify that the sit/stand option was for 30-minute intervals, it is not apparent how Claimant was prejudiced. In response to a question as to whether adding a sit/stand option to the hypothetical would be work preclusive and, if so, at what frequency, the VE testified that a sit/stand option allowing a position change after 30 minutes would reduce in number, but not altogether preclude, the jobs cited by the VE in response to the first hypothetical. The ALJ included that limitation in the RFC and relied on the VE's testimony at step five. A remand on this issue so that the ALJ can rephrase the same question to the VE would not result in a different outcome. *See Keller v. Berryhill*, 754 F. App'x 193, 199 (4th Cir. 2018) (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017)); *Dyrda v. Colvin*, 47 F. Supp. 3d 318, 326 (M.D.N.C. 2014) ("[T]he Fourth Circuit has embraced harmless error review of administrative decisions, such that, if an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced.") (citations omitted). Accordingly, remand on this issue is not warranted.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 20, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within 14 days of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 6th day of August, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge